RENDERED: MAY 16, 2025; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-1291-MR

FREDDY M. COLLINS     APPELLANT

v.     APPEAL FROM PERRY CIRCUIT COURT
HONORABLE ALISON C. WELLS, JUDGE
ACTION NO. 23-CR-00067

COMMONWEALTH OF KENTUCKY     APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: ACREE, L. JONES, AND McNEILL, JUDGES.

ACREE, JUDGE: On October 24, 2023, a jury convicted Freddy Collins of first-degree promoting contraband and possession of drug paraphernalia. Collins seeks reversal of his conviction, arguing the Perry Circuit Court committed reversible error by failing to strike two jurors for cause. We conclude the issue was not preserved and affirm.

Collins' sole argument is that he was denied a fair trial because the trial court refused to strike Juror 905 and Juror 1045 for cause. Collins had to use two peremptory strikes to remove them from the venire. He also indicated on his juror strike sheet two others he would have stricken had he not been forced to use peremptory strikes on Jurors 905 and 1045. One of the jurors Collins identified as a venireman he would have peremptorily stricken, Juror 959, was selected randomly to serve on the jury. Despite these efforts, Collins failed to satisfy the strictly applied rules for preserving this claim of error.

The rules for preserving error based on the trial court's refusal to strike a juror or jurors for cause require strict compliance. There are six "box[es] a litigant must check in order to preserve a for[-]cause strike error[.]" *Floyd v. Neal*, 590 S.W.3d 245, 252 (Ky. 2019). That is, there are six criteria to be satisfied. The litigant must:

> (1) move to strike the juror for cause and be denied;
>
> (2) exercise a peremptory strike on said juror, and show the use of that peremptory strike on the strike sheet, and exhaust all other peremptory strikes;
>
> (3) clearly indicate by writing on her strike sheet the juror she would have used a peremptory strike on, had she not been forced to use a peremptory on the juror complained of for cause;
>
> (4) designate the same number of would-be peremptory strikes as the number of jurors complained of for cause;

(5) the would-be peremptory strikes must be made known to the court prior to the jury being empaneled; and

(6) the juror identified on the litigant's strike sheet must ultimately sit on the jury.

*Id.* (carriage returns interspersed for ease of reading). The record shows Collins satisfied criteria #1 through #4 and #6. However, he failed to satisfy criterion #5.

In *Floyd*, our Supreme Court made it clear that compliance with criterion #5 – making would-be peremptory strikes known to the trial court before the jury is sworn – does not satisfy criterion #3 of clearly writing on the strike sheet which juror (or jurors) the litigant would have peremptorily stricken if not compelled to use a peremptory strike on a juror the party believes should have been stricken for cause. *Id.* at 250 (overruling *Sluss v. Commonwealth*, 450 S.W.3d 279 (Ky. 2014)). We conclude the reverse is also true – satisfying criterion #3 does not serve also to satisfy criterion #5.

*Floyd* recognized that criterion #3 and criterion #5 have distinct and necessary purposes and, therefore, one cannot substitute for the other. The Court explained this when it overruled *Sluss v. Commonwealth*, *supra*, an opinion that introduced substantial compliance into the strict preservation rules established in *Shane v. Commonwealth*, 243 S.W.3d 336, 341 (Ky. 2007), *as modified* (Apr. 9, 2008), and *Gabbard v. Commonwealth*, 297 S.W.3d 844 (Ky. 2009). The Supreme Court said *Sluss*'s rule that satisfaction of criterion #5 can also satisfy criterion #3:

inadvertently opened the door for blatant unfairness to arise during the peremptory strike process. Specifically, it allows a litigant to [forgo] writing her strikes down, and instead only identify them orally *after* the other party has, so to speak, shown its hand by identifying its peremptory strikes. This allows a litigant to manufacture an appealable issue by choosing a juror who was not struck by the other party, thereby increasing the chances that the juror the litigant identifies ultimately sits on the jury. Requiring both sides to make their peremptory strikes concrete by writing them down prior to the parties discussing their strikes with the court safeguards the fairness of this process.

*Floyd*, 590 S.W.3d at 250-51 (discussing the *Sluss*'s embrace of a substantial compliance modification to *Gabbard*). The opinion entrenches these criteria as separate and independent and, therefore, they must be satisfied separately and independently.

Certainly, none of the six criteria for preserving this kind of error is more important than any other. Each is expressly necessary. However, criterion #5 has a longer and deeper jurisprudential basis than most of the others.

Criterion #5 is based on "[a] basic general principle of the Rules of Civil Procedure . . . that a party is not entitled to raise an error on appeal if he has not called the error to the attention of the trial court and given that court an opportunity to correct it." *Little v. Whitehouse*, 384 S.W.2d 503, 504 (Ky. 1964). The physical marking of a strike sheet identifying a litigant's "would-be" strikes under criterion #3 may or may not come to the trial court's attention, and this

Court has no way of knowing whether it did or did not. The litigant or his counsel must make a record, sufficient for appellate review, that he has made the trial court aware of those "would-be" strikes. Failure to establish a clear trial court record in that way requires this Court to treat the argument as though it is being made for the first time on appeal; such original arguments in this Court are not permitted. *Springer v. Commonwealth*, 998 S.W.2d 439, 446 (Ky. 1999) ("A new theory of error cannot be raised for the first time on appeal.").

The relevance of this ancient rule presupposes that any such error is curable before trial and before any subsequent appeal. And we know it is curable. It may be cured in several ways.

"The erroneous deprivation of a peremptory challenge can only affect the result of a case if another juror the defendant would have used a peremptory strike on is impaneled to the jury." *McDaniel v. Commonwealth*, 415 S.W.3d 643, 649 (Ky. 2013) (citation omitted). Therefore, fate or fortuity might cure such trial court error. If the other jurors the defendant would have peremptorily struck do not actually sit on the jury, "any error is 'effectively cured[.]'" *Gabbard*, 297 S.W.3d at 854 (quoting *King v. Commonwealth*, 276 S.W.3d 270, 279 (Ky. 2009)).

However, trial courts need not place all hope for a cure in happenstance. The trial court in *Cummings v. Commonwealth* solved its potential error proactively. 560 S.W.3d 844 (Ky. 2018). The facts of *Cummings* are slightly

different in that the objectionable juror who was empaneled was not a "would-be" peremptory challenge; the juror, in fact, was peremptorily stricken but accidentally empaneled anyway and "no one, including the defense, realized Juror #25 was sitting on the jury during the trial." *Id.* at 845. The issue in *Cummings* was whether defense counsel waived the right to challenge Juror #25 and that required that he "neither knew nor by the exercise of reasonable diligence could have known of the grounds for challenge before the jury was accepted." *Id.* (internal quotation marks and citation omitted). The Court concluded he did know because the same thing happened with a different juror, Juror #22. Counsel objected to that juror and the trial court cured the potential error. The Supreme Court explained.

> [C]ounsel became aware that another juror, Juror #22, was erroneously empaneled and appropriately brought that issue to the court's attention prior to trial. As a result, the court designated Juror #22 as an alternate and then added another juror. Thus, there is no indication in the record that the defense should not have been similarly aware of the erroneous presence of Juror #25.

*Id.* at 845-46. The point here and the relevance to this case is that the Supreme Court indicated its acceptance of the trial court proactively curing the potential problem in this manner. But this is not the only proactive way.

"[O]ur law has held the exercise of peremptory strikes to be a 'substantial right[.]'" *Shane*, 243 S.W.3d at 341. "Not removing a biased juror from the venire, and thereby forcing a defendant to forfeit a peremptory strike,

makes the defendant take on the duty of the court and prevents him from getting the jury he had a right to choose." *Id*. at 343. "[W]hen a defendant is forced to use a peremptory strike on a juror who has not been properly excused for cause, the court has actually *taken away* from the number of peremptories given to the defendant[.]" *Id*. at 339. "To shortchange a defendant in this manner is to effectively give the Commonwealth more peremptory challenges than the defendant." *Id*. The cure is simple. Restore the balance, even if it appears the defendant is granted more peremptory strikes than the Commonwealth.

> To be clear, a trial judge acts within his or her discretion where, as here, he or she grants a criminal defendant more peremptory strikes than the Commonwealth receives. Trial judges are not impervious to errors in "for cause" strike determinations. Of course, at a certain point, a trial judge abuses his or her discretion by granting a criminal defendant *too many* extra strikes.

*Dunlap v. Commonwealth*, 435 S.W.3d 537, 582 (Ky. 2014), *abrogated on other grounds by Abbott, Inc. v. Guirguis*, 626 S.W.3d 475 (Ky. 2021). The trial court can apply this cure – allowing additional peremptory strikes – if defense counsel makes the court aware that the process of impaneling the jury reached the point that a venireman counsel believes to be biased and would have peremptorily struck is about to be put under oath.

Whether by chance, by designating a "would-be" peremptory strike an alternate juror, or by granting the defendant additional peremptory strikes, "the

error is 'effectively cured' and the defendant's substantive rights are ultimately not violated because he 'received the jury he wanted.'" *Ward v. Commonwealth*, 587 S.W.3d 312, 329 (Ky. 2019) (quoting *King*, 276 S.W.3d at 279).

There is only one question remaining. When must the litigant inform the trial court, and when is it too late?

There has been some imprecision in our *voir dire* jurisprudence because our opinions refer to the "empaneling" or "impaneling" or "seating" or "swearing in" of the jury. For example, *Floyd* says it must occur "prior to the jury being empaneled . . . ." 590 S.W.3d at 252. *See also Hurt v. Commonwealth*, 409 S.W.3d 327, 329 (Ky. 2013) ("Hurt's challenges, arising *after* the seating of the jury, were untimely . . . ."). A Kentucky trial handbook defines "Impaneling the jury" as follows:

> "Impaneling the jury" generally refers to the process of examining, challenging, passing and accepting as jurors on the trial of a particular case certain persons of those present for jury service, who have been summoned for such service. The word "impanel" covers all the steps in ascertaining who shall be the persons to sit as jurors in the case, and means the final formation of the jury by the court preceding the oath.

Thomas L. Osborne, *Impaneling Jury, Trial Handbook for Ky. Law* § 16:11 (2025 ed.).

Reading the *voir dire* jurisprudence as a body convinces this Court that the meaning should be indistinguishable from our understanding of when

-8-

jeopardy attaches. "[J]eopardy attaches when the jury is impaneled *and sworn*." *Cardine v. Commonwealth*, 283 S.W.3d 641, 645 (Ky. 2009) (emphasis added). This is consistent with the Black's Law Dictionary definition. *Empanel vb.* (15c) BLACK'S LAW DICT. (12th ed. 2024) ("To swear in (a jury) to try an issue or case. – Also spelled *impanel*"). So, until the jury takes the oath, a litigant can satisfy the requirement of criterion #5. Collins never met that opportunity with action.

Although "it is neither the function nor the responsibility of this Court to scour the record to ensure an issue has been properly preserved for appellate review," *Gasaway v. Commonwealth*, 671 S.W.3d 298, 311 (Ky. 2023), we examined the video record of the *voir dire* from the time Juror 1045 and, subsequently, Juror 905, were culled from the venire until the remaining jurors completed their oath. (Video Record (VR) 9/18/23 at 12:39:50-02:07:25.)

After Juror 1045 and Juror 905 were questioned at the bench, the trial court denied defense counsel's motion to strike them for cause. Counsel then used two peremptory strikes to remove them from the venire. (VR 9/18/23 at 12:48:23.) "With that," said counsel, "I'll pass the jury." (VR 9/18/23 at 12:55:48.) Two minutes later, the trial court asked, "Can you have your strike sheets back by 1:45?" and counsel responded affirmatively. (VR 9/18/23 at 12:57:35.) The record never shows the strike sheets' deliveries.

A bit more than an hour later, the trial court welcomed the venire back from a lunch break and asked counsel, "Is there anything the attorneys need to talk to me about before jury selection?" and counsel responded in the negative. (VR 9/18/23 at 2:03:20.) The clerk proceeded to call jury numbers and names of those who made up the jury in this case, including alternates.

The first juror called was the juror Collins said he would have peremptorily struck, Juror 959. (VR 9/18/23 at 2:03:53.) After fourteen jurors' numbers and names were called, the trial court said, "Can the attorneys approach for just a minute?" (VR 9/18/23 at 2:06:40.)

At the bench, the trial court asked, "Any questions about who is on here?" Counsel responded, "No, Your Honor." (VR 9/18/23 at 2:06:53.)

"The final box a litigant must check in order to preserve a for[-]cause strike error is to make her would-be peremptory strikes known before the jury is empaneled." *Floyd*, 590 S.W.3d at 252. The trial court here provided opportunities to check this final box, but Collins failed to do so.

We review "unpreserved claims of error on direct appeal only for palpable error. To prevail, *one must show* that the error resulted in 'manifest injustice.'" *Martin v. Commonwealth*, 207 S.W.3d 1, 3 (Ky. 2006) (citing RCr[1] 10.26) (emphasis added). As the emphasized language implies, a party must

---

[1] Kentucky Rules of Criminal Procedure.

ordinarily request and brief palpable error review, and "[a]bsent extreme circumstances amounting to a substantial miscarriage of justice, an appellate court will not engage in palpable error review pursuant to RCr 10.26 unless such a request is made and briefed by the appellant." *Shepherd v. Commonwealth*, 251 S.W.3d 309, 316 (Ky. 2008). Collins has not requested and briefed palpable error review, and we therefore decline to entertain Collins' argument for reversal.

## CONCLUSION

Given Collins' failure to demonstrate the error he alleges was properly preserved in compliance with *Floyd*, the October 24, 2023 judgment and sentence of the Perry Circuit Court is affirmed.

ALL CONCUR.


BRIEFS FOR APPELLANT:

Sarah Dailey
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Russell Coleman
Attorney General of Kentucky

Brystin Kwin
Assistant Attorney General
Frankfort, Kentucky